**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| ADAPTIVE SPECTRUM AND SIGNAL ALIGNMENT, INC., AND ASSIA SPE, LLC<br><br>Plaintiff,<br><br>v.<br><br>COMCAST CABLE COMMUNICATIONS, LLC, D/B/A XFINITY, COMCAST CABLE COMMUNICATIONS MANAGEMENT, LLC, COMCAST CORPORATION, AND COMCAST OF HOUSTON, LLC,<br><br>Defendants. | Civil Action No. 2:26-cv-868<br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiffs Adaptive Spectrum and Signal Alignment, Inc. ("ASSIA, Inc.") and ASSIA SPE, LLC ("ASSIA SPE") (collectively "ASSIA") brings this patent infringement action against Defendants Comcast Cable Communications, LLC, d/b/a Xfinity, Comcast Cable Communications Management, LLC, Comcast Corporation, and Comcast of Houston, LLC (collectively "Defendants" or "Comcast"), and alleges as follows, on information and belief:

**NATURE OF THE ACTION**

1. This is a civil action that arises under 35 U.S.C. § 271 from Defendants' infringement of ASSIA's U.S. Patent Nos. 10,848,398 (the "'398 Patent"), 11,770,313 (the "'313 Patent"), 11,050,654 (the "'654 Patent"), 9,967,757 (the "'757 Patent"), 9,860,111 (the "'111 Patent"), 11,477,108 (the "'108 Patent"), and 7,809,996 (the "'996 Patent") (collectively, the "Asserted Patents"). The '398 Patent is attached as Exhibit 1, the '313 Patent is attached as Exhibit 2, the '654 Patent is attached as Exhibit 3, the '757 Patent is attached as Exhibit 4, the '111 Patent

is attached as Exhibit 5, the ’108 Patent is attached as Exhibit 6, and the ’996 Patent is attached as Exhibit 7.

2. ASSIA was founded in 2003 by Dr. John M. Cioffi, a professor emeritus of electrical engineering at Stanford University who is widely recognized for his pioneering contributions to DSL technology. ASSIA has spent more than two decades developing technology for diagnosing, managing, and optimizing broadband and home Wi-Fi networks, and it has obtained patents on its inventions in the United States and around the world.

3. The Asserted Patents claim inventions that allow a broadband provider to manage and improve subscribers’ networks from the cloud. In several of the Asserted Patents, a remote server gathers operational data from large numbers of in-home devices, derives rules and conditions from that data, and delivers those rules to the devices so that they can adapt locally (the ’398 and ’313 Patents), and a downloadable software agent on a subscriber’s own device measures the performance of the subscriber’s broadband connections, reports it for storage and analysis, and requests changes on demand (the ’654 Patent).

4. The remaining Asserted Patents cover four more capabilities that Comcast has sold and sells today, including neighboring wireless nodes that trade configuration and measurement data with one another and reconfigure themselves accordingly (the ’757 Patent), a back-up device that reaches the provider’s management system over a separate path, such as a cellular connection, when the broadband line itself is down (the ’111 Patent), a gateway that draws on what it determines inside the home to recognize conditions out on the provider’s network (the ’108 Patent), and error monitoring on a cable link that feeds back into how much protective overhead each transmission carries (the ’996 Patent). Comcast has built its Xfinity home internet and Wi-Fi offering around exactly these capabilities.

**THE PARTIES**

5. Plaintiff Adaptive Spectrum and Signal Alignment, Inc. is a California corporation with its office located at 303 Twin Dolphin Drive, Suite 600, Redwood City, California 94065.

6. Plaintiff ASSIA SPE, LLC is a Delaware limited liability corporation with an address care of its registered agent, Harbor Business Compliance Corporation, 2915 Ogletown Road, Newark, DE 19713.

7. Defendant Comcast Cable Communications, LLC a Delaware limited liability company with its principal place of business at One Comcast Center, 1701 John F. Kennedy Boulevard, Philadelphia, Pennsylvania 19103. Comcast Cable Communications, LLC may be served through its registered agent Comcast Capital Corporation, 1201 N. Market Street, Suite 1000, Wilmington, Delaware 19801.

8. Defendant Comcast Cable Communications Management, LLC is a Delaware limited liability company operating from One Comcast Center, 1701 John F. Kennedy Boulevard, Philadelphia, Pennsylvania 19103. Process may be served on its Texas registered agent at 211 East 7th Street, Suite 620, Austin, Texas 78701.

9. Defendant Comcast Corporation is incorporated in Pennsylvania and keeps its principal place of business at One Comcast Center, 1701 John F. Kennedy Boulevard, Philadelphia, Pennsylvania 19103. It holds authority to transact business in Texas, where process may be served on its registered agent at 211 East 7th Street, Suite 620, Austin, Texas 78701.

10. Defendant Comcast of Houston, LLC is a Delaware limited liability company that operates from One Comcast Center, 1701 John F. Kennedy Boulevard, Philadelphia, Pennsylvania 19103, and that delivers Xfinity to subscribers in Texas. Process may be served on its Texas registered agent at 211 East 7th Street, Suite 620, Austin, Texas 78701.

11. On information and belief, the four Defendants function as a single business in offering the Accused Products and Services. On information and belief, Comcast Corporation directs the operations of the other three, which are its direct and indirect subsidiaries. The same Xfinity-branded broadband, Wi-Fi, and mobile offerings are designed, provisioned, marketed, and supported across them, and each Defendant participates in, exercises control over, and profits from the conduct described in this Complaint. Except where a specific entity is named, “Comcast” refers to the Defendants collectively.

12. The Defendants control, participate in the commission of, and have a direct financial interest in the infringing acts set forth herein.

13. On information and belief, Comcast, which does business under the Xfinity brand, sells broadband internet, Wi-Fi, video, voice, mobile, and security offerings to homes and businesses throughout the country. On information and belief, Comcast, itself or through subsidiaries, provides and promotes the accused offerings nationwide.

14. Each Defendant controls, participates in the commission of, and has a direct financial interest in the infringing acts set forth herein.

## JURISDICTION AND VENUE

15. ASSIA incorporates by reference and re-alleges the foregoing paragraphs as fully set forth herein.

16. This action arises under the patent laws of the United States, Title 35, Section 1 *et seq*. of the United States Code. Accordingly, this Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

17. This Court has general personal jurisdiction over Defendants due to their continuous and systematic contacts with the State of Texas, including its business activities and

offices located within and throughout the State of Texas.

18. This Court has specific personal jurisdiction over Defendants consistent with the Texas Long Arm Statute and the Due Process Clause of the Fourteenth Amendment. Defendants have purposely availed themselves of the benefits and protections of Texas and have maintained a presence in this District. Defendants have committed acts of patent infringement in this District and the State of Texas. Defendants, directly and through subsidiaries or intermediaries, have committed and continue to commit acts of infringement in this District by, among other things, designing, developing, manufacturing, importing, offering to sell, and selling products that infringe the Asserted Patents.

19. Defendants conduct continuous and systematic business in this District, including, among other acts, offering infringing products and services to those residing in this District and soliciting business from people residing in this District. Defendants make infringing sales of the accused products in this District. Defendants have committed infringing acts within this District giving rise to this action and have established minimum contacts within the forum state of Texas.

20. Venue is proper in this District under 28 U.S.C. §§ 1391 and 1400(b). On information and belief, Defendants have transacted business in this District and have committed acts of direct and indirect infringement in this District by, among other things, making, using, offering to sell, selling, and/or importing products that infringe the Asserted Patents as set forth herein. Defendants have one or more regular and established places of business in this District.

21. On information and belief, Comcast's physical footprint in this District is at least, but not limited to, Collin County and has extended its network into Liberty County, within the Beaumont Division, as part of an investment of more than $265 million announced in 2024 to reach approximately 100,000 additional households in the areas north of Houston, and it maintains

facilities or structures there. Comcast also advertises to residents of this District, including through coverage maps that show Xfinity mobile and Wi-Fi service in and around Marshall, Texas, and through promotions of its Xfinity internet plans directed at Texas customers.

22. On information and belief, Comcast commits acts of infringement in this District. Comcast provides Xfinity Internet and Wi-Fi services to subscribers in this District, supplies and leases Xfinity Gateways and Wi-Fi extenders to those subscribers, and distributes the Xfinity mobile application to them. The accused Comcast cloud platforms receive operational data from, and transmit policies and configuration to, Comcast equipment located in this District, and subscribers in this District perform the accused methods using the Xfinity app on their home networks.

## THE ASSERTED PATENTS

### The '398 Patent

23. The '398 patent is titled "Method, Apparatus, and System for Optimizing Performance of a Communication Unit by a Remote Server," and issued on November 24, 2020, from U.S. Patent Application No. 14/356,581, which was a national-phase application from an international application filed on November 10, 2011.

24. ASSIA, Inc. is the sole owner and assignee of the entire right, title, and interest in the '398 patent and has the sole right to sue and recover damages for any current, past, or future infringement. The '398 patent describes optimizing performance of a communication unit, such as a wireless communication unit, by a remote server.

25. The '398 Patent addresses a practical shortcoming of conventional access points and other communication units, namely the adaption algorithms that govern their behavior rely on rules and thresholds fixed in advance by a designer, and an individual unit lacks the processing

capacity, storage, historical data, and visibility into other similarly situated units needed to choose better rules. This claimed invention solves that problem by having a remote server collect data from monitoring devices associated with multiple communication units in different geographic areas, process the date, determine a policy, and communicate that policy. Each communication unit applies its rules and conditions to its own real-time data so that each unit's performance improves. These are concrete improvements to the operation of communication networks, not abstract ideas.

26. The '398 Patent is valid and enforceable.

**The '313 Patent**

27. The '313 patent is titled "Method, Apparatus, and System for Optimizing Performance of a Communication Unit by a Remote Server," and issued on September 26, 2023, from U.S. Patent Application No. 17/102,099, which was filed on November 23, 2020, and which is a continuation of U.S. Pat. App. Serial No. 14/356,581, which was a national-phase application from an international application filed on November 10, 2011, and which issued as U.S. Patent No. 10,848,398.

28. ASSIA, Inc. is the sole owner and assignee of the entire right, title, and interest in the '313 patent and has the sole right to sue and recover damages for any current, past, or future infringement. The '313 patent describes optimizing performance of a communication unit, such as a wireless communication unit, by a remote server.

29. The '313 Patent claims, among other things, a communication system that receives separate sets of collected data from communication units managing different networks, stores that data, generates a policy based on an analysis of both data sets, and, upon determining that performance has changed in one of the networks, transmits the policy to a communication unit that

then makes a performance-related adjustment within its own network. By drawing on data from multiple networks, the claimed system can make adjustments, such as reducing interference between neighboring networks, that no single unit could make on its own. These are concrete improvements to the operation of communication networks, not abstract ideas.

30. The ’313 Patent is valid and enforceable.

**The ’654 Patent**

31. The ’654 patent is titled “Method and System for Using a Downloadable Agent for a Communication System, Device, or Link,” and issued on June 29, 2021, from U.S. Patent Application No. 14/414,436, which was a national-phase application from an international application filed on September 25, 2012, and which claims the benefit of priority of a provisional application filed on July 13, 2012.

32. ASSIA, Inc. is the sole owner and assignee of the entire right, title, and interest in the ’654 patent and has the sole right to sue and recover damages for any current, past, or future infringement. The ’654 patent describes a downloadable agent that is placed inside a LAN where the agent collects data on behalf of the cloud or WAN-based server and then transfers that data to the cloud or WAN-based server for analysis, allowing collection of information on devices (e.g., smartphones, routers, access points, and the like) to intelligently assess and manage performance of the communication devices or network.

33. Before the ’654 Patent, a broadband provider’s visibility into the performance a subscriber actually received generally ended at equipment the provider controlled. The ’654 Patent teaches placing a downloadable software agent on a computing device inside the subscriber’s local area network, where the agent gathers information about the performance of the subscriber’s wide area (broadband) connection and sends it to a remote machine that stores and analyzes it, reports

the results, and supports on-demand requests for changes affecting throughput or latency. This architecture provides measurements and remedies that were not previously available from within the subscriber's premises. These are concrete improvements to the operation of broadband networks, not abstract ideas.

34. The '654 Patent is valid and enforceable.

**The '757 Patent**

35. The '757 patent is titled "Systems methods and apparatuses for implementing distributed wireless data sharing and control systems," and issued on May 8, 2018, from U.S. Patent Application No. 15/104,222, which was a national-phase application from an international application filed on December 17, 2013.

36. ASSIA SPE is the sole owner and assignee of the entire right, title, and interest in the '757 patent and has the sole right to sue and recover damages for any current, past, or future infringement. The '757 patent describes a distributed wireless data sharing and control system.

37. Before the '757 Patent, a wireless access point that adjusted its own settings did so blindly. It could not see how its neighbors were configured, what those neighbors were measuring, or how its own changes would affect them, and a central controller was not always reachable fast enough to help. The '757 Patent describes wireless nodes that exchange state information with one another. By using its configurations together with the measurements it has taken of airwaves, each node can decide on its own changes with the benefit of what its neighbors know, adopt those changes, and then pass its updated state along, with the process repeating across the nodes in a defined order. These are concrete improvements to the operation of wireless networks, not abstract ideas.

38. The '757 Patent is valid and enforceable.

**The ’111 Patent**

39. The ’111 patent is titled “Method and apparatus for diagnosing and configuring a broadband connection via an alternate communication path,” and issued on January 2, 2018, from U.S. Patent Application No. 15/034,856, and which claims the benefit of an international application filed on November 7, 2013.

40. ASSIA SPE is the sole owner and assignee of the entire right, title, and interest in the ’111 patent and has the sole right to sue and recover damages for any current, past, or future infringement. The ’111 patent describes a communications device coupled to broadband customer premises equipment (“CPE”).

41. A broadband provider can diagnose a subscriber’s line remotely only while the line still carries data. When the connection fails, the provider historically lost its window into the premises and had to fall back on phone calls and truck rolls. The ’111 Patent describes a second route—an alternate communications device, such as a cellular-equipped device or a smartphone—that sits alongside the broadband customer premises equipment and carries diagnostic and configuration information to the provider’s management system over a separate path when the broadband connection cannot, and that carries back the new diagnostic or configuration information the management system produces after analyzing what it received. These are concrete improvements to the operation of broadband networks, not abstract ideas.

**The ’108 Patent**

42. The ’108 patent is titled “Systems and Methods for Jointly Optimizing WAN and LAN Network Communications,” and issued October 18, 2022, from U.S. Patent Application No. 16/926,696, filed on July 11, 2020, and which claims the benefit of an international application filed on January 12, 2011.

43. ASSIA, Inc. is the sole owner and assignee of the entire right, title, and interest in the ’108 patent and has the sole right to sue and recover damages for any current, past, or future infringement. The ’108 patent describes jointly optimizing WAN and LAN Internet connections.

44. Home networks and provider networks have traditionally been managed as separate domains, each blind to the other. The ’108 Patent describes a management device that bridges them. It sits between the subscriber’s local area network and the provider’s wide area network, gathers information from one or more communication layers on the local side, and uses that information to recognize operating conditions out on the wide area network at a different layer. An example of this is how close the broadband link is to saturation. These are concrete improvements to the operation of communication networks, not abstract ideas.

45. The ’108 Patent is valid and enforceable.

**The ’996 Patent**

46. The ’996 patent is titled “Adaptive FEC Codeword Management,” issued on October 5, 2010, from U.S. Patent Application No. 12/185,729, filed August 4, 2008, and claims the benefit of priority of a provisional application filed December 7, 2003.

47. ASSIA, Inc. is the sole owner and assignee of the entire right, title, and interest in the ’996 patent and has the sole right to sue and recover damages for any past infringement. The ’996 patent relates to dynamically controlling system parameters that affect performance in communications systems, including over wired and wireless transmission channels.

48. Transmission systems protect data with forward error correction, but the amount of protection is a trade-off. Too little and impulse noise destroys data, while too much and capacity is wasted on overhead that the channel does not need. The ’996 Patent describes keeping watch on error measurements taken on a live link, after the receiver has trained and initialized, and feeding

those measurements back to a controller that adjusts how much of each transmission is given over to protective overhead. The result is a link that tracks changing noise conditions instead of being fixed at a worst-case setting. These are concrete improvements to the operation of transmission systems, not abstract ideas.

49. The ’996 patent is valid and was enforceable before it expired.

## COUNT I: INFRINGEMENT OF THE ’757 PATENT

50. ASSIA incorporates by reference and re-alleges the foregoing paragraphs as if fully set forth herein. ASSIA further alleges the below upon information and belief.

51. Defendants and their customers have infringed and continue to infringe the ’757 patent, either literally or under the doctrine of equivalents, including at least claim 1, under 35 U.S.C. § 271(a), by making, using, offering to sell, and/or selling within the United States, and/or importing into the United States, home internet products that use home wireless mesh. For example, Comcast/Xfinity’s xFi Pods mesh Wi-Fi system using Plume’s Adaptive Wi-Fi implements a method that works seamlessly with xFi Gateways to create a whole-home mesh Wi-Fi network, with automatic adaptations for optimal performance. The xFi Pods pair with the xFi Gateway to form a mesh network that dynamically optimizes coverage.

52. Comcast performs every step of claim 1. Further, Comcast (including its agents) installs and tests Comcast products in subscribers’ homes and/or businesses and thereby causes the performance of the method steps of claim 1. In addition, Comcast conditions subscribers’ participation in Comcast’s service and receipt of benefits of using Comcast’s service upon performing the steps of claim 1 and establishes the manner and timing of that performance by requiring that the home internet products work with Comcast’s service.

**COUNT II: INFRINGEMENT OF THE '111 PATENT**

53. ASSIA incorporates by reference and re-alleges the foregoing paragraphs as if fully set forth herein. ASSIA further alleges the below upon information and belief.

54. Defendants and their customers have infringed and continue to infringe the '111 patent, either literally or under the doctrine of equivalents, including at least claim 1, under 35 U.S.C. § 271(a), by making, using, offering to sell, and/or selling within the United States, and/or importing into the United States, home internet products that perform remote monitoring and troubleshooting and provide alternate connectivity when the primary connection is unavailable. For example, Comcast Xfinity comprises a customer premises system composed of the Xfinity Gateway (CPE) in the home, an alternate communications device (Xfinity app on a customer smartphone), and Comcast's cloud/network management platform (such as xFi). Comcast supports remote monitoring and troubleshooting through the Xfinity app and provides alternate connectivity when primary broadband connection is unavailable.

**COUNT III: INFRINGEMENT OF THE '398 PATENT**

55. ASSIA incorporates by reference and re-alleges the foregoing paragraphs as if fully set forth herein. ASSIA further alleges the below upon information and belief.

56. Defendants and their customers have infringed and continue to infringe the '398 patent, either literally or under the doctrine of equivalents, including at least claim 1, under 35 U.S.C. § 271(a), by making, using, offering to sell, and/or selling within the United States, and/or importing into the United States, home internet products that perform cloud-based remote management. For example, Comcast deploys CPE (xFi Gateways, xFi Pods) and a cloud-based Wi-Fi management platform (xFi / OpenSync-compatible) that implement band steering and/or provide adaptive Wi-Fi optimization and client steering features to automatically improve Wi-Fi

performance for subscriber devices.

57. Comcast performs every step of claim 1. Further, Comcast (including its agents) installs and tests Comcast products in subscribers' homes and/or businesses and thereby causes the performance of the method steps of claim 1. In addition, Comcast conditions subscribers' participation in Comcast's service and receipt of benefits of using Comcast's service upon performing the steps of claim 1 and establishes the manner and timing of that performance by requiring that the home internet products work with Comcast's service.

**COUNT IV: INFRINGEMENT OF THE '313 PATENT**

58. ASSIA incorporates by reference and re-alleges the foregoing paragraphs as if fully set forth herein. ASSIA further alleges the below upon information and belief.

59. Defendants and their customers have infringed and continue to infringe the '313 patent, either literally or under the doctrine of equivalents, including at least claim 19, under 35 U.S.C. § 271(a), by making, using, offering to sell, and/or selling within the United States, and/or importing into the United States, its home internet products that perform cloud-based remote management. For example, Comcast's Profile Management Application ("PMA") implements a method for managing a plurality of networks by monitoring and optimizing Data Over Cable Service Interface Specification ("DOCSIS") 3.1 downstream profiles across thousands of CMTSs (CMTS stands for "Cable Modem Termination System"). The system dynamically adapts to channel conditions, thereby coordinating performance improvements across multiple network segments.

60. Comcast performs every step of claim 19. Further, Comcast (including its agents) installs and tests Comcast products in subscribers' homes and/or businesses and thereby causes the performance of the method steps of claim 19. In addition, Comcast conditions subscribers'

participation in Comcast's service and receipt of benefits of using Comcast's service upon performing the steps of claim 19 and establishes the manner and timing of that performance by requiring that the home internet products work with Comcast's service.

**COUNT V: INFRINGEMENT OF THE '654 PATENT**

61. ASSIA incorporates by reference and re-alleges the foregoing paragraphs as if fully set forth herein. ASSIA further alleges the below upon information and belief.

62. Defendants and their customers have infringed and continue to infringe the '654 patent, either literally or under the doctrine of equivalents, including at least claim 1, under 35 U.S.C. § 271(a), by making, using, offering to sell, and/or selling within the United States, and/or importing into the United States, the Xfinity mobile app that gathers broadband and Wi-Fi topology. For example, Comcast provides the Xfinity mobile app (i.e., a downloadable agent) which is downloadable via App Store/Google Play. The agent gathers broadband and Wi-Fi topology and communicates with the Xfinity Cloud management platform to provide various services to the user.

63. Comcast performs every step of claim 1. Further, Comcast (including its agents) installs and tests Comcast products in subscribers' homes and/or businesses and thereby causes the performance of the method steps of claim 1. In addition, Comcast conditions subscribers' participation in Comcast's service and receipt of benefits of using Comcast's service upon performing the steps of claim 1 and establishes the manner and timing of that performance by requiring that the home internet products work with Comcast's service.

**COUNT VI: INFRINGEMENT OF THE '108 PATENT**

64. ASSIA incorporates by reference and re-alleges the foregoing paragraphs as if fully set forth herein. ASSIA further alleges the below upon information and belief.

65. Defendants and their customers have infringed and continue to infringe the ’108 patent, either literally or under the doctrine of equivalents, including at least claim 1 under 35 U.S.C. § 271(a), by making, using, offering to sell, and/or selling within the United States, and/or importing into the United States, home internet products that perform LAN and WAN monitoring and optimization. For example, Comcast provides subscriber equipment (including xFi Gateways and xFi Pods), provides the Xfinity mobile app, and operates a cloud-based Wi-Fi management platform (xFi). Comcast subscriber equipment runs OpenSync-compatible software that monitors WAN uplink parameters and local Wi-Fi conditions and communicates with Comcast’s cloud-based management platform to provide telemetry, configuration, and optimization services.

**COUNT VII: INFRINGEMENT OF THE ’996 PATENT**

66. ASSIA incorporates by reference and re-alleges the foregoing paragraphs as if fully set forth herein. ASSIA further alleges the below upon information and belief.

67. Defendants and their customers have infringed the ’996 patent, either literally or under the doctrine of equivalents, including at least claim 20, under 35 U.S.C. § 271(a), by making, using, offering to sell, and/or selling within the United States, and/or importing into the United States, systems including networks, wireless gateways, routers, modems, servers, and/or other devices that support DOCSIS 3.1 and later. For example, Comcast makes and uses its cable television and high-speed internet services supporting DOCSIS 3.1, including provisioning and configuring its DOCSIS 3.1 service for its subscribers.

**PRAYER FOR RELIEF**

Wherefore, ASSIA prays for the following relief:

A. A judgment in favor of ASSIA that Comcast has infringed one or more claims of each of the Asserted Patents;

B. An award of damages to which ASSIA is entitled under 35 U.S.C. § 284 for Comcast's past infringement;

C. A judgment that Comcast's infringement is willful and an award of enhanced damages under 35 U.S.C. § 284;

D. An award of pre-judgment interest and post-judgment interest on the damages awarded, including pre-judgment interest (pursuant to 35 U.S.C. § 284) from the date of each act of infringement of the Asserted Patents by Comcast to the day a damages judgment is entered, and an award of post-judgment interest (pursuant to 28 U.S.C. § 1961) continuing until such judgment is paid, at the maximum rate allowed by law;

E. A judgment and order finding this to be an exceptional case and requiring Comcast to pay the costs of this action (including all disbursements) and attorneys' fees, pursuant to 35 U.S.C. § 285;

F. An order requiring an accounting for damages not presented at trial;

G. Injunctive relief in that Defendants, their affiliates, subsidiaries, officers, agents, servants, employees, and successors and assigns, and other persons who are in active concert or participation with anyone in the foregoing, be enjoined from infringement of the Asserted Patents (other than the '996 patent), including but not limited to an injunction against making, using, offering to sell, selling within the United States, and importing into the United States, products that infringe the Asserted Patents (other than the '996 patent); and

H. Any and all other relief that the Court deems just and equitable.

## DEMAND FOR JURY TRIAL

Pursuant to Fed. R. Civ. P. 38, ASSIA demands a trial by jury on all claims and issues so triable.

Dated: September 23, 2026

*/s/ Melissa R. Smith*
Robert F. Kramer (Admitted E.D. Texas)
rkramer@kramerllp.com
**KRAMER LLP**
1133 Broadway, Suite 1510
New York, NY 10010
Telephone: (212) 755-6475
Facsimile: (212) 730-8885

Nicole Glauser
Texas Bar No. 24050694
nglauser@kramerllp.com
**KRAMER LLP**
500 W 2nd Street, Suite 1900
Austin, TX 78701
Telephone: (212) 363-1492

Zachariah A. Higgins (*pro hac vice forthcoming*)
zhiggins@kramerllp.com
Robert McArthur (Admitted E.D. Texas)
rmcarthur@kramerllp.com
Curt Holbreich (Admitted E.D. Texas)
cholbreich@kramerllp.com
Robert Y. Xie (*pro hac vice forthcoming*)
rxie@kramerllp.com
**KRAMER LLP**
303 Twin Dolphin Drive, Suite 600
Redwood City, CA 94065
Telephone: (650) 681-8544

Robert Mattson (Admitted E.D. Texas)
rmattson@kramerllp.com
Courtney Kasuboski (Admitted E.D. Texas)
ckasuboski@kramerllp.com
**KRAMER LLP**
2121 Eisenhower Avenue, Suite 304
Alexandria, VA 22314
Telephone: (202) 589-8187

Safraz Ishmael (Admitted E.D. Texas)
sishmael@kramerllp.com
**KRAMER LLP**
560 Harrison Avenue, Suite 214
Boston, MA 02118
Telephone: (617) 510-4871

Melissa Richard Smith
Texas Bar No. 24001351
melissa@gilliamsmith.com
**GILLIAM & SMITH, LLP**
303 South Washington Ave.
Marshall, TX 75670
Telephone: (903) 934-8450
Facsimile: (903) 934-9257

*Attorneys for Plaintiffs*
*Adaptive Spectrum and Signal Alignment, Inc.*
*ASSIA SPE, LLC*